IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| F F BUSINESS, LLC <br> d/b/a ALBURY FOOD STORE <br><br> Plaintiff <br><br> VS. <br><br> UNITED STATES OF AMERICA <br><br> Defendant | § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY TRAIL DEMAND

Plaintiff F F BUSINESS LLC doing business as ALBURY FOOD STORE ("Plaintiff") through its attorney, Clyde W. Burleson, P.C., and respectfully alleges as follows, upon information and belief:

## NATURE OF THE CLAIM

1. This is an action seeking an administrative stay pursuant to 7 C.F.R. § 279.7, 7 C.F.R. 279.10(d) and 7 U.S.C. §2023 and judicial review of a decision (the "Decision") from the Supplemental Nutrition Assistance Program ("SNAP") imposed by the Food and Nutrition Services ("FSN") permanently disqualifying Plaintiff from participating in the food stamp program based on an alleged lack of an established and implemented effective compliance policy and prevention program regarding violations of the Supplemental Nutrition Assistance Program.
In addition, the Plaintiff seeks an order of the court temporarily staying the administrative action (the ("Disqualification") pending a trial de novo by the court to determine the validity of the Disqualification.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to Title 7 U.S.C. §2023, 5 U.S.C. §703.

3. Plaintiff, which is the subject of the Decision of the FNS, is in the County of Harris, State of Texas, which is within the jurisdiction of the United States District Court for the Southern District of Texas.

4. This Court is empowered to review the Order pursuant to 7 U.S.C. §2023.

## THE PARTIES

5. Plaintiff, F F BUSINESS, LLC doing business as ALBURY FOOD STORE is a limited liability company formed under the laws of the State of Texas with a principle place of business in Houston, Harris County, Texas.

6. The United States of America (the "Defendant") is formed, maintains and controls the United States Department of Agriculture ("USDA"), of which FNS is a subsidiary.

## BACKGOUND FACTS

7. Plaintiff has operated at its current address for approximately six years.

8. Plaintiff operates a convenience/grocery store, which is open between the hours of 7:00 a.m. to 11:00 p.m., seven days per week.

9. At all relevant times, Plaintiff was a part of the SNAP Program and was therefore authorized to accept what are commonly known as "food stamps".

10. In a letter dated April 12, 2021, the Retailer Operations Division informed the Plaintiff that it was in violation of the terms and conditions of the SNAP and P-EBT regulations, 7 CFR § 270 –284, based on EBT SNAP benefit transactions that "establish clear and repetitive patterns of unusual, irregular, and inexplicable SNAP activity for your type of firm." The letter

also noted that the Plaintiff could request a trafficking civil money penalty (CMP) in lieu of a permanent disqualification within 10 days of receipt under the conditions specified in 7 CFR § 278.6(i). A true and correct copy of the letter dated April 12, 2021, is attached hereto as Exhibit "A", and is incorporated herein by reference in its entirety.

11. Prior to that date, Plaintiff had never been accused of any such wrongdoing.

12. In a response to the Retailer Operations Division of April 24, 2021, Plaintiff, through counsel, replied to the charges therein requesting the imposition of a civil money penalty in lieu of a permanent SNAP disqualification. The letter asserted that Plaintiff met the criteria for a civil money penalty as outlined in the SNAP regulations. Further, Plaintiff, which had been open since 2016, had trained its employees regarding SNAP benefits. Prior to the violations alleged in the charge letter, all store employees were required to meet with owners and/or managers and were trained on the proper use of SNAP benefits and the store's obligations under the SNAP before beginning their first shift. Prior to the charge letter, there had not been any warnings or any advertisements of violations by FNS. This period of almost six years with no issues is evidence that the training program was effective and working. Plaintiff also asserted that it is located in an economically disadvantaged and densely populated area. There are no other food store locations within an approximately one-mile radius of the Appellant that accept SNAP. Plaintiff argued that a SNAP disqualification would harm the residents of the area that rely on SNAP at ALBURY FOOD STORE as it will further limit their access to affordable and nutritious food. Due to the surrounding circumstances, Plaintiff asserted that it should be eligible for a civil money penalty or in the alternative disqualification for one year at most. In support of its contentions, the Plaintiff submitted, among other documents, a signed and notarized affidavit of the store owner, signed letter of representation, a google map of area surrounding subject firm, photographic evidence of

the outside of Albury Food Store, and an aerial photo of the neighborhood located behind the subject firm. A true and correct copy of the letter dated April 24, 2021 is attached hereto as Exhibit "B" and is incorporated herein by reference in its entirety.

13. Thereafter, Plaintiff was advised, by letter from Retailer Operations Division, dated July 9, 2021, that Plaintiff was being permanently disqualified from participation in the SNAP in accordance with 7 CFR § 278.6(e)(1) for trafficking violations. The letter also stated that the Plaintiff was not eligible for a trafficking civil money penalty (CMP) as the Plaintiff did not submit sufficient evidence to demonstrate that the firm had established and implemented an effective compliance policy and program to prevent violations of the SNAP. A true and correct copy of the letter dated July 9, 2021, is attached hereto as Exhibit "C" and is incorporated herein by reference in its entirety.

14. Pursuant to SNAP regulations, in a letter postmarked July 23, 2021, Plaintiff, through counsel, requested an administrative review of the Retailer Operations Division's decision to permanently disqualify the firm from participation in the SNAP. FNS granted Plaintiff's request for administrative review by letter dated August 16, 2021. A true and correct copy of the letter granting administrative review is attached hereto as Exhibit "D" and is incorporated herein by reference in its entirety. In an email correspondence of July 16, 2021, the Appellant, through counsel, provided additional information in support of the request for administrative review. A true and correct copy of Plaintiff's correspondence is attached hereto as Exhibit "E" and is incorporated herein by reference in its entirety.

15. Thereafter, by Final Agency Decision dated December 27, 2021, Plaintiff was advised by Robert T. Deegan, Administrative Review Officer, Administrative Review Branch, Supplemental Nutrition Assistance Program, Food and Nutrition Service, United States

Department of Agriculture, of her decision to sustain the Plaintiff's permanent disqualification from participating in SNAP. A true and correct copy of the Final Agency Decision, is attached hereto as Exhibit "F" and is incorporated herein by reference in its entirety.

## STATEMENT OF CLAIMS

### AS AND FOR A FIRST COUNT
(For an Administrative Stay)

16. Plaintiff repeats, reiterates and realleges each and every allegation made in the foregoing paragraphs, as if fully set forth at length herein.

17. In order to obtain a stay of enforcement in this type of matter, Plaintiff must demonstrate (i) irreparable harm and (ii) a likelihood of success on the merits.

18. Plaintiff will suffer irreparable harm if forced to serve a permanent disqualification.

19. As detailed above, a significant portion of Plaintiff's business is derived from the SNAP program.

20. As such, a permanent disqualification is likely to put Plaintiff out of business, thus causing irreparable harm not only to the Plaintiff, but also to the employees and customers.

21. Even if Plaintiff is able remain open, Plaintiff will not be able to recover the revenues lost as a result of the inability to accept food stamps.

22. As such, Plaintiff will suffer irreparable harm.

23. Further, the community will suffer irreparable harm if this store is disqualified from accepting EBT. The closest store that is open for comparable work hours for seven days per week is at least half a mile or ore from Plaintiff's location. Due to the location of Plaintiff, in a low-income neighborhood, affordable and nutritious food is not widely accessible. By permanently disqualifying Plaintiff from the SNAP program, accessibility to affordable and nutritious food will be even more limited.

24. Plaintiff is also likely to succeed on the merits.

25. As such, Plaintiff will suffer irreparable harm and are likely to succeed on the merits, an administrative stay of the permanent disqualification is warranted.

**AS AND FOR A SECOND COUNT**
**(For Judicial Review of the Order)**

26. Plaintiff repeats, reiterates and realleges each and every allegation made in the foregoing paragraphs, as if fully set forth at length herein.

27. Under the laws governing the Act, a plaintiff is usually entitled to a trial *de novo* by a court to "determine the validity of the questioned administrative action." *See*, 7 U.S.C. §2023.

28. As detailed above, the USDA violated Plaintiff's due process rights.

29. As such, the Order should be extinguished.

30. Even if a trial *de novo* is not awarded, the penalty imposed was arbitrary and capricious.

31. The Regulatory Flexibility Act, 5 U.S.C. § 601-612, requires agencies to analyze the impact of rulemaking on small entities, such as Plaintiff, and consider alternatives that would minimize any significant impacts on a substantial number of small entities.

32. Further, the SNAP guidelines authorize disqualifications, such as the one proposed against Plaintiff, for repeat offenders or more severe violators.

33. Further, as detailed above, the community will suffer harm and inconvenience especially because Plaintiff is located in a low-income neighborhood.

34. Here, the guidelines purportedly followed by SNAP allow a civil monetary penalty in lieu of a permanent disqualification.

35. Likewise, similar offenders are more typically fined as opposed to disqualified. *See, Bani #2 Food Corp. v. United States of America,* 10 Civ. 00005 (S.D.N.Y.).

36. Further, the applicable regulation allows for monetary penalty in lieu of disqualification where suspending a vendor from the SNAP program would present a hardship for the community. *See,* 7 C.F.R. § 278.6(f)(1). As detailed above, the disqualification of Plaintiff would cause such a hardship.

37. Further, there are four criteria to be considered in order for a firm such as the Plaintiff to avoid disqualification. They include: (i) whether the firm has established and implemented an effective compliance policy as specified in § 278.6(i)(1); (ii) whether the firm established that both its compliance policy and program were in operation at the location where the violations occurred prior to the occurrence of the violations cited for in the charge letter sent to the firm, (iii) whether the firm had developed and instituted an effective personnel training program as specified in § 278.6(i)(2), and (iv) whether firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations; or it is only the first occasion in which a member of firm management was aware of, approved, benefited from, or was involved in the conduct of any trafficking violations by the firm (7 C.F.R. § 278.6(i); *see also* 7 U.S.C. § 2021(b)(3)(B)) (FNS has "the discretion to impose a civil penalty … in lieu of disqualification … [if] there is substantial evidence that [the firm] had an effective policy and program in effect to prevent violations of the" FSA.). In order to comply with the "substantial evidence" requirement, a firm must submit documentary evidence sufficient to establish the foregoing elements. *See, Arias v. U.S.,* 2014 WL 5004409 at *12 (S.D.N.Y. 2014).

38. In the instant case, Plaintiff clearly demonstrated that (i) it has developed an effective compliance policy as specified in § 278.6(i)(1), (ii) the firm established that both its compliance policy and program were in operation at the location where the alleged violations

occurred prior to the occurrence of violations cited in the charge letter sent to the firm, (iii) the firm had developed and instituted an effective personnel training program as specified in § 278.6(i)(2), and (iv) firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations; or it is only the first occasion in which a member of firm management was aware of, approved, benefited from, or was involved in the conduct of any trafficking violations by the firm.

39. As such, the permanent disqualification was arbitrary and capricious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, F F BUSINESS LLC, doing business as ALBURY FOOD STORE, respectfully request that the Court grant the following relief:

(1) A stay of the disqualification ordered by the UDSA; and

(2) *De novo* review of the Order and the subsequent extinguishment therefrom, or

(3) Extinguishment of the Order because the punishment levied was arbitrary and capricious; and

(4) Order Defendants to reimburse Plaintiff for all costs and fees associated with the commencement and prosecution of this lawsuit.

(5) For such other relief as the Court may deem proper in the public interest.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by their complaint.


Dated: Houston, Texas
January 26, 2021

*/s/ Clyde Burleson*_____
Clyde Burleson
Attorney-in-charge
SBN: 00796278

SDID: 754365<br>
clyde@burlesoncraig.com<br>
Clyde W. Burleson, P.C.<br>
1533 W. Alabama, Ste. 100<br>
Houston, Texas 77006<br>
Telephone: (713) 526-2226<br>
Facsimile: (713) 526-3787<br>
**Attorney for Plaintiff**